**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROMONE THOMAS-WARNER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  11-5854** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM AND OPINION**

Tucker, J.                                                    December ___, 2011

        Presently before the Court are Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil

Procedure 12(b)(6) (Doc. 2) and Plaintiff's Response in Opposition thereto (Doc. 3). Upon careful

consideration of the parties' submissions and for the reasons set forth below, Defendants' Motion will

be granted in part and denied in part.

**I.      FACTUAL BACKGROUND**

        The facts, construed in the light most favorable to Plaintiff, are as follows. On February 28, 2007,

Detectives Brian Kelly and John Hughes ("the detectives" or "Detectives Kelly and Hughes") arrested

Plaintiff, Romone Thomas-Warner ("Warner"), under a warrant issued for his brother, Comoniti Thomas

("Thomas"), for charges of armed robbery. (Compl. ¶ 1). When Detectives Kelly and Hughes asked

Plaintiff about the warrant, Plaintiff told the detectives that the photograph was of him, "but all the

information pertaining to the warrant [was] for Comoniti Thomas." (Compl. ¶ 2). When the detectives

put Plaintiff's police identification number in their computer, a photograph of Thomas appeared

alongside all of Plaintiff's biographical information, and Plaintiff's photograph appeared alongside

Thomas's biographical information. (Compl. ¶ 3). Plaintiff explained to the detectives that he and his

brother were arrested together on August 31, 2004, and suggested that that arrest was the cause of the error in the police computer system. (Compl. ¶ 4). The photographs of Plaintiff and Thomas that the detectives showed Plaintiff were also dated August 31, 2004. (Compl. ¶¶ 5-6). Although Plaintiff repeatedly told Detectives Kelly and Hughes that his name was Romone Thomas-Warner, the detectives insisted that Plaintiff and his brother were using each other's names. (Compl. ¶ 7). Although Plaintiff was advised that he would be released from police custody after fingerprinting to ensure that he was not Comoniti Thomas, Plaintiff was not released. (Compl. ¶ 9).

Plaintiff alleges that he was framed by Detectives Kelly and Hughes and that the officers of the Philadelphia Police Department have conspired to hide the mistaken publication of Plaintiff's photo along with his brother's information. (Compl. ¶¶ 9, 19). At Plaintiff's trial for armed robbery, Detectives Kelly and Hughes testified that the victim of the armed robbery brought them a picture of Plaintiff, accompanied with his brother's information, which appeared in the <u>Northeast Times Weekly</u> under the heading, "Five Most Wanted," on November 23, 2006, and claimed that it was a picture of the person that robbed her.[1] (Compl. ¶ 13-16). Plaintiff alleges that Detectives Kelly and Hughes suggested to the victim that Plaintiff was the person that robbed her. (Compl. ¶ 17). Additionally, Plaintiff alleges that he was denied his right to an indictment by a grand jury for this trial, and notes that during trial, the prosecutor was withdrawn from the case. (Compl., ECF Doc. 1 at 20, ¶ 23). Plaintiff was not brought up to the courtroom while on trial, and if he had been, the victim of the robbery would have been able to declare that Plaintiff was not the perpetrator. (Compl. ¶ 24). Plaintiff was acquitted of the armed robbery charges on July 8, 2008. (Compl. ¶ 32).

---

[1] Plaintiff's Complaint contains two dates in which this picture appeared in the <u>Northeast Times Weekly</u>, November 23, 2006 and November 23, 2007. However, it appears that the "2007" date is a mistake since Plaintiff refers to a "2006" date in the remainder of the Complaint. (<u>See</u> Compl. ¶ 84).

After Plaintiff was acquitted, he met with attorney, Stephen B. Lavner, and told him about the rights violations to which he believed he was subjected. (Compl. ¶ 42). Then, on July 25, 2008, Plaintiff was retaliated against because of the acquittal, and was harassed, beaten, and charged with additional crimes of which Plaintiff had no knowledge. (Compl. ¶¶ 38, 46). Specifically, Plaintiff was assaulted by Officer Hector L. Rodriguez, Jr. (Compl. ¶ 47). Plaintiff received medical treatment at Mercy Philadelphia Hospital, and upon his discharge, he was taken into police custody and charged with aggravated assault and possession of a controlled substance. (Compl. ¶ 49). Although the prosecution dropped the aggravated assault charge, Plaintiff pled guilty to the possession charge on November 10, 2008, at the advice of the Public Defender assigned to his case. (Compl. ¶ 52). Plaintiff accepted the plea deal because he had already been falsely incarcerated, beaten, and charged with several offenses. (Compl. ¶ 53(A)). As part of the plea agreement, Plaintiff received twelve months of probation. (Compl. ¶ 91).

The next year, on May 12, 2009, Plaintiff was again apprehended by police while meeting with his probation officer. (Compl. ¶ 59). This time, Plaintiff was charged with robbing a pizza delivery man. (Id.). Plaintiff was denied a line-up when he was arrested, and the only time Plaintiff was identified by a witness to the robbery was during his trial. (Compl. ¶ 72). Again, Plaintiff was acquitted of these charges on July 8, 2010. (Compl. ¶ 83).

Plaintiff originally filed this lawsuit in the Court of Common Pleas of Philadelphia against the City of Philadelphia ("the City"), the Philadelphia Police Department ("the Department"), the Philadelphia District Attorney ("the District Attorney"), and Philadelphia Police Commissioner Charles H. Ramsey ("the Commissioner" or "Ramsey").[2] Plaintiff's Complaint is dated June 17, 2011, however

---

[2] Plaintiff was incarcerated from May 12, 2009 until August 8, 2010, and claims that he could not have filed suit during this time. (Compl. ¶ 82).

the Certificate of Service and Verification is dated June 24, 2011 and August 24, 2011. (Compl., ECF Doc. 1 at 22, 25, 26).[3] Plaintiff's Complaint alleged that the Philadelphia Police Department's mistake regarding Plaintiff's identity, and a subsequent effort to cover the mistake up and frame Plaintiff, resulted in a number of state tort and constitutional violations by the named Defendants. (Compl. ¶¶ 84-90). Defendants removed the case to this court on September 15, 2011. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and § 1367(a).

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer 468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal

---

[3]In his Response to Defendants' Motion to Dismiss, Plaintiff explains that he filed his Complaint on June 17, 2011, and then default judgment was entered in favor of Plaintiff on July 27, 2011 because the City had failed to respond to the Complaint. (Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 3). Then on August 1, 2011, the default judgment was overturned because Plaintiff had failed to properly effect service upon the Defendants. (Id.) The Complaint was apparently reissued on August 24, 2011, and Defendants were properly served thereafter. (Compl., ECF Doc. 1 at 2 n.1).

conclusions cast in the form of factual allegations. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Bell Atl. Corp. v. Twombly et.al.</u>, 550 U.S. 544, 555 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). In <u>Twombly</u> the Court made clear that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"<u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. <u>Ashcroft</u>, 129 S. Ct. at 1949. In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint -- the well-pleaded, nonconclusory factual allegation[s]." <u>Id.</u> "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." <u>Id.</u> at1950.

In light of the decision in <u>Iqbal</u>, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion to dismiss. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211. If the court can only infer the mere possibility of misconduct,

the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

### III.   DISCUSSION

Defendants City of Philadelphia and Police Commissioner Charles H. Ramsey have asked the Court to dismiss Plaintiff's Complaint on the grounds that it is time-barred under Pennsylvania state tort law and 42 U.S.C. § 1983. Defendants have also asked the Court to dismiss them from the matter because Plaintiff has failed to adequately plead claims against them in his Complaint.

### A. Statute of Limitations

The "Third Circuit Rule" permits a limitations defense to be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations. . . . If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson,313 F.3d 128, 135 (3d Cir. 2002).

"When presented with a pro se litigant, [the Court has] a special obligation to construe his complaint liberally." Higgs v. United States. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011). Thus, even if  a pro se plaintiff's claims are not set out in the clearest fashion, the Court is obligated to discern all the possible claims that the Plaintiff may be alleging. From what the Court can observe on the face of the Complaint,[4] Plaintiff appears to be bringing state law claims for personal injury,

---

[4]The Court addresses only those claims apparent from the face of Plaintiff's Complaint. To the extent that Plaintiff intended to bring claims not addressed in this Opinion, the Plaintiff may do so, in a clear and specific fashion, in an amended complaint.

fraud, libel, slander, bad faith,[5] malicious prosecution,[6] assault, battery, harassment[7] and false arrest

or imprisonment. (See, e.g., Compl., ECF Doc. 1 at 1; ¶¶ 1, 46, 47, 51, 58, 84).  Plaintiff also alleges

violations of various constitutional provisions, specifically citing in his complaint the First

Amendment, the Fourth through Tenth Amendments, and the Fourteenth Amendment to the

Constitution. (Compl., ECF Doc. 1 at 23).[8]

––––––––––––––––––––––

[5]Although Plaintiff lists this claim in the heading of his Complaint, (see Compl., ECF Doc. 1 at 13), the Court is unable to discern any bad faith claim, a claim typically brought in the context of contract or insurance disputes, from his Complaint. Therefore, the Court concludes that there is no actionable bad faith claim on the face of Plaintiff's Complaint.

[6]Plaintiff lists this claim as one for wrongful use of civil process, which pertains to the wrongful initiation of civil proceedings against a person. See Catania v. Hanover Ins. Co., 566 A.2d 885, 888 (Pa. Super. Ct. 1989). However, Plaintiff's claims arise out of allegations of the wrongful initiation of criminal matters, and therefore, the Court construes Plaintiff's claim as one for malicious prosecution, which deals with the wrongful initiation of a criminal matter. See Ashton v. Hancher, 53 Pa. D & C.2d 354, 356 (1971) ("[M]alicious use of civil process has to do with the wrongful initiation of process in civil proceedings. Malicious use of criminal process has to do with the wrongful initiation of criminal process and is commonly called 'malicious prosecution.'").

[7]Pennsylvania courts do not recognize a separate tort of harassment. See DeAngelo v. Fortney, 515 A.2d 594, 596 (Pa. Super. Ct. 1986). Therefore, the Court concludes that Plaintiff has no actionable claim for harassment.

[8]Plaintiff specifically alleges violations of his right to due process of law, a speedy trial, and a grand jury, and he also raises claims of unreasonable search and seizure, and cruel and unusual punishment. Also, although Plaintiff does not specifically allege it, based on his claims of assault and battery by Philadelphia police officers, the court assumes Plaintiff also alleges a claim for excessive use of force in violation of the Fourth Amendment.

Additionally, the Court notes Plaintiff's allegations that Detectives Kelly and Hughes and other Philadelphia police officers conspired against him. Such an allegation could be construed as a claim for civil rights conspiracy under 42 U.S.C. §§ 1983, 1985, or 1986. However, the filing deadline for civil rights conspiracy claims "runs from each overt act causing damage" and "for each act causing injury, a claimant must seek redress within the prescribed limitations period." Wells v. Rockefeller, 728 F.2d 209, 217 (3d Cir. 1984). Plaintiff's Complaint fails to allege these various overt acts sufficiently enough to permit the Court to attempt a statute of limitations analysis for these claims. Therefore, the Court will not analyze any conspiracy claims for limitations period purposes. If Plaintiff wishes to raise such claims, he may submit an amended complaint.

Plaintiff's state personal injury claims (assault, battery, false arrest and imprisonment, fraud, malicious prosecution) would be governed by the statute of limitations within 42 PA. CONS. STAT. ANN. § 5524, which is two years. See 42 PA. CONS. STAT. ANN. § 5524(1) ( explaining that"[a]n action for assault, battery, false imprisonment, false arrest, [or] malicious prosecution""must be commenced within two years"); 42 PA. CONS. STAT. ANN.§ 5524(7) (explaining that fraud claims are also governed by a two-year statute of limitations). Moreover, although he does not state the statute under which he brings his claims, the Court will assume that Plaintiff's constitutional claims are governed by Section 1983 of Title 42 of the United States Code. See Canon v. City of Phila., 86 F. Supp. 2d 460, 465 (E.D. Pa. 2000) (explaining that section 1983 provides a remedy when defendants acting under color of state law (e.g., police officers acting in the course of their employment) deprive a plaintiff of a right secured by the Constitution). Although section 1983 does not have a statute of limitations provision, section 1983 claims brought in Pennsylvania are also governed by the two-year statute of limitations for state personal injury actions.  Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998). Plaintiff's state libel and slander claims, on the other hand, are governed by a one-year statute of limitations. 42 PA. CONS. STAT. ANN. § 5522(1).

Plaintiff's allegations appear to arise out of the following events:

1. The use of Plaintiff's photograph in conjunction with his brother's information, published in the Northeast Times Weekly under the headline "Five Most Wanted" on November 23, 2006. (Compl.  ¶¶ 13-14).

2. Plaintiff's arrest on February 28, 2007. (Compl. ¶ 1).

3. Plaintiff's harassment, beating, and arrest on July 25, 2008. (Compl. ¶¶ 46-47).

4. Plaintiff's assault by Officer Hector L. Rodriguez, Jr. on August 18, 2008. (Compl. ¶ 51).

5.      Plaintiff's arrest on May 12, 2009. (Compl. ¶ 59).

Under Pennsylvania state law, the limitations period on a plaintiff's claim begins to run from the time the plaintiff suffers the injury or has reason to know of the injury. Morgan v. Johns-Manville Corp., 511 A.2d 184, 186 (Pa. 1986). Similarly, under federal law, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Montgomery, 159 F.3d at 126. To determine when Plaintiff's claims accrued, the Court must analyze Plaintiff's claims in three groups: 1) Plaintiff's claims for false imprisonment or arrest; 2) Plaintiff's claims for malicious prosecution; and 3) Plaintiff's remaining personal injury and section 1983 claims.

### 1. False Arrest or Imprisonment

Plaintiff's state law claims for false arrest and imprisonment accrued at the time of Plaintiff's arrest -- that is, on February 28, 2007, July 25, 2008, and May 12, 2009. See Moore v. McComsky, 459 A.2d 841, 843 (Pa. Super Ct. 1983) (holding that the plaintiff's claim for false arrest against the defendant officers accrued at the time of arrest). Therefore, the statute of limitations for those claims expired on February 28, 2009, July 25, 2010, and May 12, 2011, respectively.

On the other hand, Plaintiff's federal claims of false arrest accrued on the dates that Plaintiff was officially arraigned on the charges related to the arrest. The accrual date for federal claims of false arrest, pursuant to the Fourth Amendment, is guided by the Supreme Court's decision in Wallace v. Kato, 549 U.S. 384 (2007). In that decision, the Court held that the limitations period for a claim for false arrest or imprisonment begins to run "when the alleged false imprisonment ends."

Wallace, 549 U.S. at 389.[9] A false imprisonment ends when the victim is released or "once the victim becomes held pursuant to [legal] process – when for example, he is bound over by a magistrate or arraigned on charges." Id. The Court takes judicial notice of the fact that Plaintiff's preliminary arraignment for his February 28, 2007 arrest took place on March 1, 2007 (Phila. Cnty. Mun. Ct., Criminal Docket No. MC-51-CR-009535-2007); see also Compl. ¶ 11(A) ("March 1, 2007 I was charged after detective Br[ia]n Kelly and [J]ohn Hughes noticed an error.") The preliminary arraignment for Plaintiff's arrest on July 25, 2008 took place on July 25, 2008, (Phila. Cnty. Mun. Ct., Criminal Docket No. MC-51-CR-0037402-2008), and Plaintiff's preliminary arraignment for his May 12, 2009 arrest took place on May 13, 2009, (Phila. Cnty. Mun. Ct., Criminal Docket No. MC-51-CR-0021378-2009).[10] Thus, the statute of limitations on Plaintiff's federal false arrest claims began to run once the "false imprisonment ended," on March 1, 2007, July 25, 2008, and May 13, 2009, respectively, and the statute of limitations for these claims expired two years later, on March 1, 2009, July 25, 2010, and May 13, 2011.

## 2. Malicious Prosecution

Plaintiff's claims for malicious prosecution accrued when the charges against him were dismissed. A section 1983 claim for malicious prosecution does not accrue until proceedings against

---

[9]In Wallace, the United States Supreme Court indicated that the claims of false arrest or false imprisonment are one in the same. See Wallace, 549 U.S. at 388-89 (internal quotations omitted) ("False arrest and false imprisonment overlap; the former is a species of the latter. Every confinement of the person is an imprisonment. . . . We shall thus refer to the two torts together as false imprisonment.") Thus, this Court will treat these two claims identically for the purposes of determining the accrual date of the statute of limitations.

[10]The Court also notes that additional, non-preliminary arraignments for these three arrests took place on March 7, 2007, July 31, 2008, and May 20, 2009, respectively, and that even if the Court were to use these dates as the accrual dates for Plaintiff's federal false arrest/imprisonment claims, Plaintiff's claims would still fall outside of the two-year statute of limitations.

the criminal defendant are dismissed. Smith v. Holtz, 87 F.3d 108, 110 (3d Cir. 1996); see also Heck v. Humphrey, 512 U.S. 477, 487 (1994) (holding that a claim for malicious prosecution cannot proceed "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated"). In other words, a section 1983 claim for malicious prosecution does not accrue "so long as the potential for a judgment in the pending criminal prosecution continues to exist." Smith, 87 F.3d at 110. Similarly, under Pennsylvania state tort law, a claim for malicious prosecution accrues on the date that the proceedings terminated favorably to the accused. Cap v. K-Mart Discount Stores, Inc., 515 A.2d 52, 53 (Pa. Super. Ct. 1986).

Plaintiff alleges that he was acquitted of the charges related to the May 12, 2009 arrest on July 8, 2010. The statute of limitations for Plaintiff's state and federal malicious prosecution claim began to run on that day, allowing Plaintiff until July 8, 2012 to file a malicious prosecution claim. Plaintiff also alleges that he was acquitted of the charges relating to his February 28, 2007 arrest on July 8, 2008. Thus, Plaintiff would have had to have filed his malicious prosecution claim arising out of that action by July 8, 2010. Finally, presuming that Plaintiff may even bring a malicious prosecution claim for the July 25, 2008 arrest in which Plaintiff pled guilty to some charges,[11] he would have had to have brought such a claim within two years after his guilty plea -- by November 10, 2010.

---

[11]Both state and federal malicious prosecution claims require the element that the proceeding terminate favorably to the accused. See Kossler v. Crisanti, 564 F.3d 181, 186, 187 n.2 (3d Cir. 2009) (explaining that a plaintiff must show that "the criminal proceeding ended in plaintiff's favor" in a malicious prosecution claim under both Pennsylvania and federal law).

### 3. __Plaintiff's Claims for Assault, Battery, Libel, Slander, Fraud, and His Remaining Section 1983 Claims__

Plaintiff's claims for assault, battery, libel, slander, and fraud accrued on the day the incidents giving rise to those claims occurred. First, with regard to Plaintiff's claims for assault, battery, fraud, libel, and slander, there is nothing latent to be found in actions as obvious as the ones Plaintiff alleges. At the time that Plaintiff was assaulted or beaten, Plaintiff knew, or at least should have known, of the unlawfulness of those acts. Similarly, the use of Plaintiff's photograph under the heading "Five Most Wanted" in the Northeast Times Weekly is also something he knew, or at least should have known about at the time of publication. Additionally, Plaintiff was aware of the alleged false charges brought against him at the time he was arrested and arraigned for those charges.

Therefore, under both state and federal law, the limitations period for claims arising from these incidents began to run on the dates that those incidents occurred, and expired one year later on November 23, 2007[12] for the libel and slander claim, and two years later on July 25, 2010 and August 18, 2010, for the assault and battery claims. And presuming that Plaintiff's claims for fraud stem from the allegedly false charges brought against him, the statute of limitations for those claims would have expired no later than two years from the dates on which he was arraigned for those charges – on March 1, 2009, July 25, 2010, and May 13, 2011. See supra Part A.1 (taking judicial notice of the arraignment dates for each of Plaintiff's arrests).

Similarly, Plaintiff's remaining section 1983 claims related to these three arrests alleging violation of due process, denial of his right to a grand jury, denial of his right to a speedy trial,

---

[12]Even if the Court presumes that publication did not take place until November 23, 2007, see supra note 1, the statute of limitations for Plaintiff's libel and slander claims would have still expired on November 23, 2008.

unreasonable search and seizure, excessive use of force, and cruel and unusual punishment would have arisen at least by the time his trials began, or at the latest, by the time his trials ended[13] -- on July 8, 2008, November 10, 2008, and July 8, 2010.  Therefore, the statute of limitations for these claims would have expired two years later on July 8, 2010, November 10, 2010, and July 8, 2012, if not earlier.

### 4. **Most of Plaintiff's Claims are Untimely**

Most of the claims that the Court is able to discern from Plaintiff's Complaint are untimely. Plaintiff's Complaint includes three separate dates: June 17, 2011, June 24, 2011, and August 24, 2011. In his response to the Motion to Dismiss, Plaintiff claims that his Complaint was filed, with notice to defend, on June 17, 2011. However, Defendants allege that service was not properly effected upon them until August 31, 2011. (Defs.' Mot. Dismiss, ECF Doc. 2, at 2). Because, on a Motion to Dismiss, the Court must construe all facts in the light most favorable to the non-moving party, and because the critical date is the date on which the Complaint was filed, the Court will presume that Plaintiff's Complaint was filed on June 17, 2011.

Even presuming a June 17, 2011 filing date, most of Plaintiff's claims are untimely. All of Plaintiff's claims arising out of the February 28, 2007 and July 25, 2008 arrests, and the trials regarding those arrests, are untimely, as they had to be filed, at the latest, by November 10, 2010. Moreover, any claim relating to Plaintiff's May 12, 2009 arrest is untimely, as such a claim had to be filed, at the latest, by May 13, 2011. Therefore, all of these claims will be dismissed with prejudice.

---

[13]Because the nature of Plaintiff's section 1983 claims is hard to discern from his Complaint, the Court will presume the latest possible accrual date for these claims. Depending on Plaintiff's claim, it is possible that the accrual dates for these section 1983 claims occurred even earlier.

The only claims the Court is <u>certain</u> that Plaintiff has filed prior to the expiration of the statute of limitations are the state and federal malicious prosecution claims stemming from the trial ending on July 8, 2010, which Plaintiff had until July 8, 2012 to file. Therefore, the Plaintiff's state and federal malicious prosecution claims arising out of the trial ending on July 8, 2010 are the only claims which the Court will uphold.

Beyond these two claims, the only other claims that could possibly be construed as timely are any section 1983 claims arising from the trial ending on July 8, 2010 which accrued on or after June 17, 2009. However, because these claims are not sufficiently pled in the Complaint in order to permit the Court to discern them, the Court is unable to conclusively determine whether such claims are timely. Therefore, the Court will also dismiss Plaintiff's remaining section 1983 claims arising out of the trial ending on July 8, 2010, without prejudice, so that Plaintiff, if he so chooses, may file an amended complaint which adequately pleads such claims.

**B. <u>Equitable Tolling</u>**

In his Complaint, Plaintiff appears to agree with the Court's conclusion that most of his claims are time-barred, explaining that he "was unable to follow through with [his] civil suit, within the allowed statute of limitations, which . . . . is two years." (Compl. ¶ 43). However, Plaintiff's Complaint appears to allege grounds for equitable tolling. Federal equitable tolling may be permitted if the plaintiff "in some extraordinary way has been prevented from asserting his or her rights." <u>Lake v. Arnold</u>, 232 F.3d 360, 370 (3d Cir. 2000). These "extraordinary ways" can include: "(1) where a defendant actively misleads a plaintiff with respect to [his] cause of action; (2) where the plaintiff has been prevented from asserting [his] claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts [his] claims in a timely manner but has done so in the wrong forum."

Lake, 232 F.3d at 370 n.9. Additionally, in order for the court to apply equitable tolling, the plaintiff "must show that he or she exercised reasonable diligence in investigating and bringing [the] claims." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998).

Under state law, "mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the limitations period." Moore, 459 A.2d at 845. Moreover, "imprisonment alone is insufficient to extend the prescribed [state] limitation[s period]." Id.; see also 42 PA. CONS. STAT. ANN. § 5533. The two general exceptions to this rule are: 1) the discovery rule - when "the existence of an injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period," Moore, 459 A.2d at 845; or 2) when "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," Molineux v. Reed, 532 A.2d 792, 794 (Pa. 1987).

Plaintiff requests that the Court "grant excluded time [because Plaintiff]  was unable to follow through with [his] civil suit [] within the allowed statute of limitations." (Compl. ¶ 43). To support the tolling of the statute of limitations, Plaintiff alleges that on July 18, 2008, after he was released from jail, he met with attorney, Stephen B. Lavner for a consultation regarding the violation of his rights. (Compl. ¶ 42). Plaintiff alleges in his response to the Motion to Dismiss that after this initial meeting with Lavner, and after Plaintiff's arrest on July 25, 2008, he "never heard from counsel again." (Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 3). Plaintiff also claims that it was "impossible" for him to file a claim himself because he was incarcerated from May 12, 2009 through August 8, 2010. (Compl. ¶ 82). Moreover, Plaintiff argues that "it's totally impossible for any human being or citizen to be eligible to make claims while criminal charges are still pending [or] . . . still in police custody." (Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 3).  Lastly, Plaintiff argues that the

Commonwealth's failure to provide him with discovery for one of his criminal trials until February 12, 2008, as well as his filing of several Pa. R. Crim. P. 600 speedy trial motions, warrant equitable tolling for his civil claims in this Court.

Plaintiff fails to allege sufficient facts to warrant equitable tolling of the statute of limitations under either the state or federal standards for tolling. Under federal law, neither Plaintiff's incarceration nor the garden variety neglect of an attorney,[14] qualify as an extraordinary circumstance which would absolve him of his responsibility to seek a remedy for alleged civil rights violations. See, e.g., Wallace, 549 U.S. at 396 ("[W]hen has it been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him? . . . Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); Bacchus v. United States, No. 05-2107, 2006 WL 1517746, at *4 (D.N.J. May 23, 2006) (holding that equitable tolling was inapplicable where the plaintiff merely asserted that an attorney's office failed to file the required complaint). But see Seitzenger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 241 (3d Cir. 1997) (equitably tolling the statute of limitations because the plaintiff was "extremely diligent in pursuing her claim" but missed the deadline because her attorney made affirmative misrepresentations that he had filed her complaint). Furthermore, there is no allegation that Plaintiff was reasonably diligent in the pursuit of his claim -- although Plaintiff notes that he never heard from his attorney again, there is no indication that Plaintiff made any efforts to ensure his claim was filed.

Moreover, under state law, Plaintiff's incarceration cannot be grounds for tolling, and his

---

[14]Solely for the purposes of deciding the motion to dismiss, the Court presumes Plaintiff established an attorney/client relationship with Lavner.

attorney's alleged failure to file a claim on his behalf is a mistake insufficient to extend the statute of limitations because that mistake does not fall into the tolling exceptions regarding concealment or discovery issues.  Additionally, any Rule 600 speedy trial motions which Plaintiff may have filed are distinct from the claims which he has raised in his civil complaint, and therefore, would not be grounds for equitable tolling. Furthermore, while Plaintiff is correct that some claims, such as malicious prosecution claims in particular, may not be brought while criminal charges are pending, the statute of limitations applied to malicious prosecution claims, in accruing only after the dismissal of criminal charges, accounts for this fact. Yet, despite this delayed accrual date, most of Plaintiff's malicious prosecution claims fell well outside of the statute. Lastly, any delay by the Commonwealth in providing Plaintiff with discovery during his criminal trial would have had no effect on the Plaintiff's ability to file suit for alleged civil rights violations, most of which occurred before his trial began. Therefore, the Court finds that Plaintiff has not demonstrated any grounds for the equitable tolling of his claim.

### C. Claims Against the City of Philadelphia

Defendants argue that Plaintiff's claims against the City of Philadelphia should be dismissed because Plaintiff fails to allege sufficient grounds for municipal liability in his Complaint. To hold a municipality liable under section 1983, a plaintiff must establish that: 1) the municipality had a "policy" or "custom" that deprived him of his constitutional rights; 2) the municipality acted deliberately and was the moving force behind the deprivation; and 3) his injury was caused by the identified policy or custom. Pelzer v. City of Phila., 656 F.Supp.2d 517, 531 (E.D. Pa. 2009). Section 1983 liability may not be imposed upon a municipality solely on a respondeat superior theory. Monell, 436 U.S. at 692. The plaintiff must show that the municipality, through one of its

policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation. Watson v. Abington Twp., 478 F.3d 144, 155-56 (3d Cir. 2007).

Nowhere in Plaintiff's Complaint does he allege that the City of Philadelphia had a policy or custom that deprived him of his rights. Reading the Complaint in the light most favorable to Plaintiff, the Court is unable to discern any part of the Complaint that raises an allegation that is even similar to a policy or custom argument. In fact, in his Response to the Motion to Dismiss, Plaintiff states that the City of Philadelphia "did not deprive me of my civil rights." (Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 3).

With regard to any municipal liability claim pursuant to Pennsylvania state law, the Political Subdivision Tort Claims Act provides that a municipality is generally immune from liability for injuries caused by its employees. 42 PA. CONS. STAT. ANN. § 8541. There are eight exceptions to this general immunity, none of which Plaintiff has alleged in his Complaint.[15] Thus, the Court agrees with Defendants that the City of Philadelphia should be dismissed from the case because Plaintiff has failed to sufficiently plead a claim for municipal liability under section 1983 or the Political Subdivision Tort Claims Act.

**D. Claims Against Commissioner Ramsey**

Defendants also argue that Police Commissioner Ramsey should be dismissed as a defendant in the case because Plaintiff's Complaint is void of allegations regarding the Commissioner. As the

---

[15]These exceptions include: 1) when damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having a defense of governmental or official immunity; or 2) acts of a local agency or employee involving: a) vehicle liability; b) care, custody or control of personal property; c) real property; d) trees, traffic controls and street lighting; e) utility service facilities; f) streets; g) sidewalks; or h) care, custody or control of animals. 42 PA. CONS. STAT. ANN. § 8542.

Court has already noted, there is no <u>respondeat</u> <u>superior</u> liability in section 1983 claims. An individual defendant must have personal involvement in the alleged wrongs for liability to attach. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual defendants who are policymakers may be liable under section 1983 if it is shown that they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." <u>A.M. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004) (quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989)) (quotations omitted). Alternatively, a supervisor may be personally liable under section 1983 if "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." <u>A.M.</u>, 372 F.3d at 386 (citing <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Moreover, under Pennsylvania state law, "[i]t has long been held that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." <u>Durham, Jr. v. McElynn</u>, 772 A.2d 68, 69 (Pa. 2001).

The Court agrees that Commissioner Ramsey should be dismissed as a defendant in this case. Once again, the Court is unable to glean from Plaintiff's Complaint any allegations specific to Commissioner Ramsey that sufficiently plead a claim of supervisory liability under section 1983. Additionally, to the extent that Plaintiff is claiming that  the Commissioner's employees violated Plaintiff's rights**,** (<u>see</u> Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 5), Plaintiff would be suing Commissioner Ramsey, a high public, policy-making official, in his official capacity, making Commissioner Ramsey absolutely immune from such a state law claim.  Thus, the Commissioner should be dismissed from this matter.

-19-

E. **Request for Appointment of Counsel**

In his response to Defendants' Motion to Dismiss, Plaintiff also requests that the Court appoint him counsel in this matter. Section 1915(e)(1) of Title 28 of the United States Code "gives district courts broad discretion to determine whether an appointment of counsel is warranted." Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Section 1915(e)(1) permits a court to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). In making this determination, courts must first determine if the claim is meritorious. Tabron, 6 F.3d at 155. Then courts should consider a non-exhaustive list of factors which includes: 1) whether the plaintiff has the ability to present his case based on his education, work experience, litigation experience and literacy; 2) whether the plaintiff will be able to pursue the requisite factual legal investigation; 3) the complexity of the legal issues in the case; and 4) the practicality of appointing counsel from a very limited pool of volunteer lawyers. Id. at 155-57. Additionally, before appointing counsel "courts should consider whether an indigent plaintiff could retain counsel on his or her own behalf. If counsel is easily attainable and affordable by the litigant, but the plaintiff simply has made no effort to retain an attorney, then counsel should not be appointed by the court." Id. at 157.

In this case, it is not clear to the Court whether or not Plaintiff is able to obtain his own counsel. In his Complaint, Plaintiff explains that he met with at least one attorney in connection with his civil claims. This leads the Court to believe that Plaintiff is capable of seeking counsel on his own. Moreover, Plaintiff has not alleged that he is unable to afford counsel. Thus, his request for the appointment of counsel is denied without prejudice.[16]

---

[16]Plaintiff is invited to reassert his request, as well as any request to proceed in forma pauperis (see Pl.'s Resp. Mot. Dismiss, ECF Doc. 3 at 4 in which Plaintiff asserts that he is already proceeding in forma pauperis), accompanied by the proper information and forms.

IV.    **CONCLUSION**

For the reasons set forth herein, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss is denied with regard to Plaintiff's state and federal malicious prosecution claims arising out of the trial ending on July 8, 2010. Plaintiff's remaining section 1983 claims arising out of the trial ending on July 8, 2010 are dismissed without prejudice. All of Plaintiff's remaining claims which were addressed in this Opinion are dismissed with prejudice. Both the City of Philadelphia and Commissioner Ramsey are dismissed from the matter without prejudice. Plaintiff's request for appointment of counsel is denied without prejudice. An appropriate order follows.